IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SHESTER SULLIVAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 04-0473-WS-M** |
| ) | |
| **CITY OF SATSUMA,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on defendants' Supplemental Motion for Summary Judgment (doc. 45), which was filed with leave of Court on October 11, 2005. The Motion has been briefed and is ripe for disposition.

**I.    Background.**

In an Order (doc. 39) dated September 9, 2005, the Court granted defendants' motion for summary judgment in part, and denied it in part. Pursuant to that Order, plaintiff Shester Sullivan's only remaining causes of action are a Title VII retaliation claim against defendant City of Satsuma, and a § 1983 retaliation claim against defendant James Elmore. Both claims turn on defendants' conduct from April - August 2002, including rescission of a recommended pay increase for Sullivan, reprimands and memoranda that are critical of Sullivan's job performance, and an unfavorable evaluation in August 2002.

In denying summary judgment on the retaliation claims, the Court found a genuine issue of material fact as to whether Sullivan had engaged in protected activity, as required to sustain such a cause of action. The Court relied on a contemporaneous memorandum prepared by Elmore regarding a meeting on April 8, 2002, at which Sullivan had complained that he was being denied acting supervisor responsibilities in the Public Works Department. Elmore's memorandum states, "He also said that he thought it was because he was black." (Plaintiff's Exh. D.)

During his deposition, however, Sullivan emphatically and repeatedly testified that he did not complain of race discrimination to Elmore or anyone else at the City of Satsuma until well after the April 8 confrontation. In questioning about the April 8 memorandum, the following exchange occurred:

"Q:   Okay. He, meaning you, also said that he thought it was because you were black. Did you make that statement to him at that time?
"A:   No.
"Q:   Okay. When is the first time you told James Elmore I think you're doing this because I'm black, or indicated or told him that this was in your opinion a racial issue?
"A:   I really can't remember.
"Q:   Okay. But it was sometime after April 8th, correct, the day of this letter, Exhibit 2?
"A:   It was after that letter.
"Q:   Okay. And I know you can't tell me exactly when. Are we talking about a period of days, weeks?
"A:   More like weeks."

(Sullivan Dep., at 56-57.)[1]

Defense counsel sought to elicit more specific testimony from Sullivan as to when he had first complained to Elmore or the City about race discrimination, in relation to other significant events in the case. In response to such questions, Sullivan testified that he had never complained to Elmore or any City official about race discrimination prior to his attorney's April 15, 2002 letter requesting a meeting.

---

[1]   Elsewhere in his deposition, Sullivan was asked even more pointed questions along this same line of inquiry of whether his complaints to Elmore about job-related issues included a racial component:

"Q:   Okay. During that first complaint did you ever bring up that you thought it was race or anything like that, or did you just say, listen, this isn't right, I need to be able to have keys?
"A:   Well, I knew it was race.
"Q:   Did you ever say it was race though to Mr. Elmore, say, listen, you're only doing this because I'm black?
"A:   The statement I made to him, what you got against me. And the statement he made back to me, there's some things I don't like about you. And I asked him, I said what that is? And he never would say. He walked off."

(Sullivan Dep., at 38-39.)

(Sullivan Dep., at 60.)[2] Sullivan also denied having complained of race discrimination to Elmore or the City prior to his unfavorable performance evaluation of August 10, 2002. (*Id.* at 82.)[3] Finally, Sullivan acknowledged that he never complained of race discrimination prior to filing his EEOC Charge in October 2002. (*Id.* at 85.)[4]

If credited on summary judgment, Sullivan's steadfast denials that he had ever complained of

---

[2]   The relevant passage is as follows:

"Q:   Sure. Prior to April 15th of 2002, which is the date of this letter, had you ever complained to Mr. Elmore or anybody else with the City of Satsuma that you felt race was the reason for what was going on, before this letter?
"A:   No, not before the letter, not to him.
"Q:   Well, him, you mean Mr. Elmore?
"A:   Correct.
"Q:   Anybody else, like with Mr. Landrum or Mr. Black or anybody else with the city that you might have told that to?
"A:   No."

(Sullivan Dep., at 60.)

[3]   Sullivan's testimony on this point is straightforward and unequivocal:

"Q:   Prior to the August 10th, 2002 evaluation had you complained to Mr. Elmore that you thought race was a factor in why you were being treated differently?
"A:   No, I didn't complain to him.
"Q:   Okay. Had you complained to anybody else with the City of Satsuma that race was a factor and why you were being treated differently?
"A:   No."

(Sullivan Dep., at 82.)

[4]   The testimony on this point is as follows:

"Q:   Am I correct in my understanding that you never brought up race discrimination until you made your initial complaint with the EEOC?
"A:   Correct.
"Q:   You hadn't complained to Mr. Elmore or anybody with the City of Satsuma about race discrimination until that time, until you filed your complaint with the EEOC, correct?
"A:   Correct."

(Sullivan Dep., at 85.)

race discrimination prior to October 2002 would be fatal to his retaliation claims because they negate the "protected activity" and "causal link" elements. Undoubtedly, defendants could not have retaliated against him between April 2002 and August 2002 for engaging in protected activity if such protected activity did not happen until several months later. But Elmore's April 8 memorandum included a specific statement that Sullivan did complain of race discrimination at the April 8 meeting, before the retaliatory activity commenced. On summary judgment, then, a critical legal issue was whether Sullivan could rely on Elmore's memorandum as evidence of protected activity, or whether he was confined to his own version of the events, as reflected in his deposition.

The parties' original summary judgment briefs did not address this pivotal question, either through argument or citation to authorities. For that reason, the Court's September 9 Order fell back on the bedrock Rule 56 principle that conflicts in the summary judgment record must be resolved in the light most favorable to the nonmovant. Upon doing so, the Court found that the incongruent evidence created a genuine issue of fact as to whether Sullivan had engaged in protected activity on April 8, 2002.[5] Because defendants' sole stated ground for seeking dismissal of the retaliation claims was plaintiff's alleged failure to engage in protected activity before the purportedly retaliatory conduct occurred, the Court denied their motion for summary judgment as to those causes of action.

A month after entry of the September 9 Order, defendants submitted a proposed Supplemental Motion for Summary Judgment which was limited to the "protected activity" issue. In particular, defendants contended that the Eleventh Circuit's *en banc* opinion in *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) precludes Sullivan from withstanding summary judgment via defense evidence that contradicts his own sworn testimony. In the interests of efficiency and judicial economy, the Court authorized filing of the Supplemental Motion.

---

[5] The Court reached this conclusion with substantial misgivings, as reflected in a footnote stating that "the Court is troubled that a plaintiff can satisfy the protected activity threshold even when he has emphatically testified under oath that he did not engage in such activity, simply because other record evidence suggests that he did. There appears to be at least a strong equitable argument that a plaintiff should be bound by his own admissions and should be unable to avoid the swing of the summary judgment axe by relying on defense evidence that directly contradicts his own sworn testimony." (September 9 Order, at 21 n.31.)

**II.     Analysis.**

On its face, the *Evans* decision appears directly on point. *Evans* was a § 1983 strip search case in which the plaintiffs' counsel proffered a "mixed description of events" from the summary judgment record, including some portions of the plaintiffs' testimony but also certain aspects of the defendants' testimony that conflicted with the plaintiffs' testimony. 407 F.3d at 1278 n.7. In rejecting this approach, the *Evans* court explained as follows:

> "When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant. Instead, when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*. Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided."

*Evans*, 407 F.3d at 1278 (emphasis in original).

Applying this holding to Sullivan's situation, *Evans* would plainly forbid this Court from allowing Sullivan to "pick and choose" portions of the defense evidence that contradict his own sworn testimony in stitching together a set of facts to survive Rule 56 scrutiny.[6] Under the clear language of *Evans*, on summary judgment this Court must credit Sullivan's version of events as a unified whole. In that regard, neither Sullivan nor this Court may cherry pick the parts of Sullivan's story that help his cause, then selectively ignore the remainder. Likewise, *Evans* precludes this Court on summary

---

[6] Of course, this rule does not imply that defense evidence may never be credited on summary judgment. Defense evidence may readily be considered as part of the constellation of summary judgment facts where it supplements, is in harmony with, or otherwise does not contradict plaintiff's version. For example, suppose a plaintiff is injured in a car accident at a busy intersection. In his deposition, plaintiff testifies that he never saw the car that hit him. Defense evidence that the plaintiff was struck by a cherry-red Camaro Z28 might properly be considered on summary judgment, even though it technically was not part of the plaintiff's "version" of events. But if the plaintiff definitively testifies that he was struck by a tan Pinto, *Evans* bars him from relying on that defense evidence for summary judgment purposes because it would be contrary to his "version." This is so even (and perhaps especially) if the plaintiff later learns that the defendant in fact drives a cherry-red Camaro Z28.

judgment from crediting defense evidence over contradictory testimony by Sullivan merely because the former casts his claims in a rosier hue.  Simply put, *Evans* espouses an "in for a penny, in for a pound" rule.  If a plaintiff's sworn narrative of events is part of the summary judgment record, then the legal viability of his case must be ascertained by reference to that narrative, taken as a whole, not just the portions that he finds convenient or helpful.  Thus, the rule promulgated by *Evans* is that a plaintiff cannot disavow his own testimony in favor of conflicting defense evidence that better suits his purposes on summary judgment.[7]

Notwithstanding the foregoing, plaintiff maintains that this case is not governed by the *Evans* rule.[8]  According to plaintiff, Sullivan's deposition testimony reflects uncertainty as to when the protected activity took place.  When asked by defense counsel when he first complained of racial discrimination, Sullivan testified, "I really can't remember." (Sullivan Dep., at 57.)  Plaintiff argues that the challenged deposition testimony occurred only after he was "swayed" by further questioning, and characterizes such testimony as mere "guess-work" that "occurred three years after the actual events."

---

[7] In a concurring opinion in *Evans*, Judge Carnes cogently explained the reasoning behind this "warts and all" requirement as follows: "[A]bsent some extraordinary circumstance, no reasonable jury would believe that a party was lying when he said something harmful to his own case. Reasonable juries know that is not how human nature, influenced by self-interest, works.  And when we decide whether summary judgment is warranted, we view the evidence in the non-movant's favor, but only to the extent that it would be reasonable for a jury to resolve the factual issues that way." *Evans*, 407 F.3d at 1284 (Carnes, J., concurring specially).

[8] As a threshold matter, plaintiff asserts that defendants should not be permitted to supplement their motion for summary judgment because *Evans* was published in May 2005, such that it was available to defendants at the time of the first Rule 56 motion.  The Court agrees that defendants could and should have cited *Evans* in their earlier summary judgment submissions.  To that end, the Court has duly chided defendants for their delay.  (*See* Order of October 11, 2005 (doc. 44), at 2.) However, in its discretion, the Court permitted defendants to file the Supplemental Motion for Summary Judgment so that the *Evans* issue could be addressed before trial rather than at the Rule 50(a) stage.  The interests of efficiency and judicial economy clearly militate in favor of resolving the legal sufficiency of plaintiff's "protected activity" evidence now, rather than allowing the issue to fester until the trial is well underway.  Moreover, the filing of the Supplemental Motion works no unfair prejudice on plaintiff.  Thus, to the extent that plaintiff's brief is a veiled request for reconsideration of whether to allow filing of the Supplemental Motion, that request is denied.

(Plaintiff's Brief (doc. 52), at 3.)[9]  According to plaintiff, a reasonable inference is that Sullivan did not remember when he first complained of discrimination and that he simply guessed in his deposition. Plaintiff argues that this inference is bolstered by the following three facts: (i) paragraph 9 of the Complaint alleges that defendants rescinded a merit pay increase to Sullivan after he complained of race discrimination; (ii) the EEOC investigator's notes of an April 2003 conversation with Sullivan reflect that he told her that he had complained of race discrimination to Elmore in April 2002; and (iii) the Elmore memorandum of April 8, 2002 shows that Sullivan told Elmore that he thought he was being mistreated because he is black.

The Court cannot agree with plaintiff's characterization of his deposition responses.  While it is correct that Sullivan testified, "I really can't remember," in response to an open-ended question about when he first complained, he answered other, more narrowly-framed questions in definite, unwavering terms.  The end result is a pattern of consistent, unambiguous responses in which Sullivan denied complaining of race discrimination at the April 8 meeting with Elmore, denied complaining of race discrimination prior to his attorney's April 15 letter, denied complaining of race discrimination prior to the August 2002 performance evaluation, and denied complaining of race discrimination at any time prior to the October 2002 EEOC Charge.  The transcript does not show that defense counsel browbeat, badgered or harangued Sullivan into answering these questions, nor does it reflect any discomfort, unease or lack of confidence on Sullivan's part in responding.  Sullivan answered these questions in definite, absolute terms, with no discernable hedges or qualifiers.  This is simply not a situation in which a plaintiff's deposition testimony exhibits waffling or hesitation; to the contrary, plaintiff provided clear, unconditional answers.  That such responses place Sullivan's retaliation claims in an

---

[9] Plaintiff also implies that his deposition testimony is unreliable because he "sat for his deposition while medicated due to an [on] the job injury," which might have caused him to be "in error when he 'guessed' about the timing." (*Id.* at 4.)  But there is no evidence in the record that the deposition was in any way compromised or adversely affected by any medication Sullivan may have been taking.  At most, the record shows that at the time of his deposition Sullivan was taking Loritab for knee pain. (Second Declaration of Shester Sullivan (doc. 40), ¶ 7.)  Sullivan does not assert in any of his three Declarations that this medication impaired his memory or mental acuity during the deposition, or otherwise compromised the veracity or accuracy of his responses.

extraordinarily precarious position is not a reason to discount them as mere guesswork; rather, it is all the more reason to credit them on summary judgment, pursuant to Judge Carnes' special concurrence in *Evans*.

Nor is the Court persuaded that the purportedly corroborating documents raise a legally adequate inference in Sullivan's favor. The Complaint is unverified and is signed only by Sullivan's counsel; therefore, the version of events chronicled therein is not probative of plaintiff's knowledge or recollections at the time of its filing. Elmore's April 8 memorandum does not call into question whether Sullivan "guessed" in his deposition. After all, defense counsel showed that document to Sullivan and many of the challenged responses appear to have been made while Sullivan had a copy of that memorandum in front of him. Far from the April 8 memorandum refreshing his recollection, Sullivan repudiated the portion indicating that he had told Elmore that his adverse treatment was "because he was black." Having categorically denied that the April 8 memorandum is accurate on this point, Sullivan cannot now utilize that document as a vehicle to reach a jury. And the EEOC investigator's notes are largely uninteresting because Sullivan's accompanying declaration does not indicate that they refreshed his recollection about what really happened on April 8. Given Sullivan's unequivocal rejection during his deposition of Elmore's written account of the April 8 meeting, it strains credulity past the breaking point that he would now endorse an EEOC investigator's notes attributing to him full agreement with Elmore's written account of the April 8 meeting. No explanation for this abrupt about-face has been provided.

In short, despite plaintiff's diligent efforts to recharacterize or discredit it, Sullivan's unambiguous deposition testimony binds him to a version of events under which he never complained of race discrimination until he filed his EEOC Charge in October 2002. To be sure, plaintiff is entitled to rely on summary judgment evidence that clarifies or augments his testimony, provided there is an adequate explanation for the clarification. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984) (explaining that there may be some occasions when a nonmovant may create a genuine issue of material fact by submitting affidavit clarifying testimony given in his deposition); *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (observing

that a nonmovant "may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits"); *Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995) (stating that, even under the "sham affidavit" doctrine, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony"); *Stewart v. Board of Comm'rs of Shawnee County, Kansas*, 216 F. Supp.2d 1265, 1270 (D. Kan. 2002) (considering information in affidavits that served to clarify, explain or correct prior misstatements, as affidavits were not a "sham" with respect to such information). Here, however, the evidence on which Sullivan seeks to rely (the April 8 memo, the EEOC notes) does not clarify or augment his deposition testimony; rather, it negates it.

In the absence of any explanation for this contradiction, *Evans* teaches that Sullivan is "stuck with" the version of the facts articulated in his deposition. Plaintiff's conclusory suggestion that his deposition testimony with regard to the timing of complaints of race discrimination was unreliable guesswork is insufficient to enable Sullivan to distance himself from that testimony. *Evans* counsels that when a plaintiff stakes himself to a version of the facts in his sworn deposition testimony, he cannot create a genuine issue of material fact by pointing to other evidence that contradicts his testimony, effectively asking the district court to disregard his own version of the facts. This is precisely what Sullivan has attempted to do here. In his deposition, Sullivan testified without qualification or disclaimer that he never complained of race discrimination until October 2002. For this Court to disregard that testimony for summary judgment purposes and instead to credit other evidence showing that Sullivan complained of race discrimination in April 2002 would be to contravene the clear principles enunciated in *Evans*.

In light of these considerations, Sullivan's retaliation claims stand or fall on his version of the facts as presented in his deposition testimony, and he may not withstand summary judgment by pointing to conflicting evidence and asking the Court to disbelieve his testimony. In his deposition, Sullivan categorically testified that he did not engage in protected activity until October 2002. Because his retaliation claim is predicated exclusively on alleged retaliatory activity occurring between April 2002 and August 2002, Sullivan cannot show protected activity, much less the requisite causal link between those allegedly adverse employment actions and protected activity that had not happened yet. Sullivan

is therefore unable as a matter of law to establish a *prima facie* case of retaliation. *See, e.g., Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004) (*prima facie* case requires showing of protected activity, adverse employment action, and causal link between the protected activity and the adverse action).

**III.    Conclusion.**

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact and that defendants are entitled to judgment in their favor as a matter of law on all of plaintiff's remaining causes of action. Defendants' Supplemental Motion for Summary Judgment (doc. 45) is **granted**. There being no remaining claims, this action is **dismissed with prejudice**. A separate judgment will enter.

DONE and ORDERED this 28th day of October, 2005.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE